# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ' |
| | ' |
| v. | ' CRIMINAL NO. 4:15-CR-319 |
| | ' |
| IDIA ORIAKHI, | ' |
| | ' |
| Defendant. | ' |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas; Senior Trial Attorney Jonathan T. Baum and Trial Attorneys Aleza S. Remis and William S.W. Chang, Fraud Section, Criminal Division, United States Department of Justice; Defendant, Idia Oriakhi ("Defendant"); and Defendant's counsel, Robert J. Fickman, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.      Defendant agrees to plead guilty to Count Two of the Second Superseding Indictment.   Count Two charges Defendant with conspiracy to violate Title 18, United States Code, Section 1349, that is healthcare fraud, in violation of Title 18, United States Code, Section 1347.   By entering this plea, Defendant agrees that she is waiving any right to have the facts that the law makes essential to the punishment proven to a jury or a judge beyond a reasonable doubt.

### Punishment Range

2.      The *statutory* maximum penalty for violation of Title 18, United States Code, Section 1349, is a term of imprisonment of not more than ten years or a fine of not more than

$250,000, or both; full restitution; and forfeiture of assets as outlined below.   Defendant may also receive a term of supervised release after imprisonment of up to three years.   *See* Title 18, United States Code, Sections 1347, 3556, 3559(a)(3), 3571(b)(3), 3581(b)(3), and 3583(b)(2). Defendant acknowledges and understands that if she should violate the conditions of any period of supervised release that may be imposed as part of her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation.   *See* Title 18, United Stated Code, Sections 3559(a)(3) and 3583(e)(3).   Defendant understands that she cannot have the imposition or execution of the sentence suspended, nor is she eligible for parole.

### Mandatory Special Assessment

3.      Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.   The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4.      Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States.   Defendant understands that if she is not a citizen of the United States, by pleading guilty she may be removed from the United States, denied citizenship, and denied admission to the United States in the future.   Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

2

## Exclusion from Federal Healthcare Programs

5.      Defendant understands and acknowledges that as a result of this plea, Defendant

will be excluded from participating in all federal healthcare programs, including the Medicare and

Medicaid Programs ("Medicare" and "Medicaid," respectively).   Defendant agrees to complete

and execute all necessary documents provided by any department or agency of the federal

government, including but not limited to, the United States Department of Health and Human

Services, to effectuate this exclusion within sixty days of receiving the documents.   This

exclusion will not affect Defendant's right to apply for and receive benefits as a beneficiary under

any federal health care program, including Medicare and Medicaid.

## Rights at Trial

6.      Defendant understands that by entering into this agreement, she surrenders certain

rights as provided in this Plea Agreement.   Defendant understands that the rights of a criminal

defendant include the following:

      (a)      If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

      (b)      At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the opportunity to confront those witnesses and her attorney would be allowed to cross examine them.   In turn, Defendant could, but would not be required to, present witnesses and other evidence on her own behalf.   If the witnesses for Defendant would not appear voluntarily, she could require their attendance through the subpoena power of the court; and

      (c)      At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   But if Defendant desired to do so, she could testify on her own behalf.

3

## Cooperation

7.      The parties understand this Plea Agreement carries the potential for a motion for

departure under Section 5K1.1 of the United States Sentencing Guidelines (the "Sentencing

Guidelines" or the "Guidelines").   Defendant understands and agrees that whether such a motion

is filed will be determined solely by the United States through the United States Department of

Justice, Criminal Division, Fraud Section.   Should Defendant's cooperation, in the sole judgment

and discretion of the United States, amount to "substantial assistance," the United States reserves

the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States

Sentencing Guidelines.   Defendant further agrees to persist in that plea through sentencing, fully

cooperate with the United States, and not oppose the forfeiture of assets contemplated in

paragraphs 18 through 21 and 23 through 27 of this Plea Agreement.   Defendant understands and

agrees that the United States may request that sentencing be deferred until that cooperation is

complete.

8.      Defendant understands and agrees that the usage "fully cooperate," as used

herein, includes providing all information relating to any criminal activity known to Defendant,

including, but not limited to, healthcare fraud.   Defendant understands that such information

includes both state and federal offenses arising therefrom.   In that regard:

(a)     Defendant agrees that this Plea Agreement binds only the United States
        Attorney for the Southern District of Texas and the United States
        Department of Justice, Criminal Division, Fraud Section and Defendant,
        and that it does not bind any other United States Attorney or any other
        component or unit of the Department of Justice;

(b)     Defendant agrees to testify truthfully as a witness before a grand jury or in
        any other judicial or administrative proceeding when called upon to do so
        by the United States.   Defendant further agrees to waive her Fifth
        Amendment privilege against self-incrimination for the purpose of this

4

Agreement;

(c)    Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)    Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the grand jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)    Defendant agrees to provide to the United States all documents in her possession or under her control relating to all areas of inquiry and investigation; and

(f)    Should the recommended departure, *if any*, not meet Defendant's expectations, Defendant understands she remains bound by the terms of this Plea Agreement and that she cannot, for that reason alone, withdraw her plea.

**Agreement Binding – Only Southern District of Texas and**
**U.S. Department of Justice, Criminal Division, Fraud Section**

9.    This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas; the United States Department of Justice, Criminal Division, Fraud Section; and Defendant.   It does not bind any other United States Attorney or any other component of the Department of Justice.   The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

**Sentence Determination**

10.    Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a).   The United States and Defendant agree that the following Sentencing Guidelines will be used to calculate Defendant's Guidelines range:

5

(a)     Defendant and the United States agree that the loss related to the conduct described in the Factual Basis of this Plea Agreement is the amount Defendant and her co-conspirators billed to Medicaid, which was approximately $8,372,991, and that this loss amount will be used to support an 18-level enhancement to her base offense level under Section 2B1.1(b)(1)(J) of the Sentencing Guidelines because Defendant and her co-conspirators intended to defraud Medicaid of more than $3.5 million;

(b)     Defendant and the United States agree that the Court should apply Section 2B1.1(b)(7)(B)(ii) of the Sentencing Guidelines and enhance Defendant's base offense level by 3 levels because Defendant and her co-conspirators defrauded Medicaid of more than $7 million;

(c)     Defendant and the United States agree that the Court should apply Section 2B1.1(b)(2)(A)(i) of the Sentencing Guidelines and enhance Defendant's base offense level by 2 levels because the count of conviction involved ten or more victims;

(d)     Defendant and the United States agree that the Court should apply Section 2B1.1(b)(10)(C) of the Sentencing Guidelines and enhance Defendant's base offense level by 2 levels because Defendant and her co-conspirators used sophisticated means to commit the count of conviction; and

(e)     Defendant and the United States agree that the Court should apply Section 3B1.1(c) of the Sentencing Guidelines and enhance Defendant's base offense level by 2 levels because Defendant managed or supervised the criminal activity underlying the count of conviction.

11.     Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that she may have received from her counsel, the United States, or the Probation Office, is a prediction, not a promise, and such estimate **did not induce her guilty plea** and is not binding on the United States, the Probation Office, or the Court.   The United States does not make any promise or representation concerning what sentence Defendant will receive.   Defendant further understands and agrees that the Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S. Ct. 738 (2005).   Accordingly, Defendant understands

that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

12.     Defendant acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.   Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.   If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

13.     Defendant understands and agrees that each and all waivers contained in the Plea Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

**The United States' Agreements**

14.     The United States agrees to each of the following:

    (a)     At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that she receive a 2-level downward adjustment pursuant to Section 3E1.1(a) of the Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines;

    (b)     If Defendant qualifies for an adjustment under Section 3E1.1(a) of the Sentencing Guidelines and Defendant's offense level is 16 or greater, the

7

United States may move for an additional 1-level downward adjustment based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding her role in the offense;

(c)    Defendant and the United States agree that the base offense level for Count Two, Conspiracy to Commit Healthcare Fraud, is determined by Sections 2B1.1(a)(2) and (b) of the Sentencing Guidelines;

(d)    If Defendant fulfills her obligations under this Plea Agreement, the United States agrees to recommend a sentence at the low end of the applicable Sentencing Guideline range;

(e)    If the Defendant substantially assists the United States, and a Motion is made to the Court; the United States will recommend to the Court that the reduction in sentence be subtracted from the low end of the applicable guideline range; and

(f)    If Defendant pleads guilty to Count Two of the Second Superseding Indictment, persists in that plea through sentencing, and fulfills her obligations under the cooperation provisions of this plea agreement; and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the Second Superseding Indictment at the time of sentencing.

### United States' Non-Waiver of Appeal

15.    The United States reserves the right to carry out its responsibilities under

Guidelines sentencing.   Specifically, the United States reserves the right to:

(a)    Bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)    Set forth or dispute sentencing factors or facts material to sentencing;

(c)    Seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)    File a pleading relating to these issues, in accordance with Section 6A1.2 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)     Appeal the sentence imposed or the manner in which it was determined.

### Factual Basis for Guilty Plea

16.     Defendant is pleading guilty because she is guilty of the offense charged in Count Two of the Second Superseding Indictment, which charges her with conspiracy to commit healthcare fraud, in violation of Title 18, United States Code, Section 1349.   If this case were to proceed to trial, Defendant agrees that the United States could prove each element of the offense charged in Count Two beyond a reasonable doubt.   The following facts, among others, would be offered to establish Defendant's guilt.   During the time period alleged in the Second Superseding Indictment:

The Oriakhi Companies

Defendant's father and co-conspirator, Godwin Oriakhi ("Oriakhi"), and Defendant's mother owned, operated, and controlled five home health agencies known as Aabraham Blessings, LLC ("Aabraham Blessings"); Baptist Home Care Providers, Inc. ("Baptist"); Community Wide Home Health, Inc. ("Community Wide"); Four Seasons Home Healthcare, Inc. ("Four Seasons"); and Kis Med Concepts, Inc. ("Kis Med") (collectively the "Oriakhi Companies"), which were Texas corporations located in and around Houston, Texas—all in the Southern District of Texas. Defendant was an office manager and administrator, and between in or around 2012 and in or around 2016, Defendant helped Oriakhi and her mother manage and administer the Oriakhi Companies.

The Oriakhi Companies made money by submitting claims to the Medicare and Medicaid Programs ("Medicare" and "Medicaid," respectively), which were "health care benefit programs" that affected interstate commerce, as defined by Title 18, United States Code, Section 24.   Of the Oriakhi Companies, Baptist was the only company enrolled as a provider with both Medicare and

9

Medicaid—the remaining Oriakhi Companies were enrolled as Medicaid providers only.   Baptist submitted claims both to Medicare for home healthcare services and, along with the other Oriakhi Companies, to the State of Texas' Home and Community-Based Service ("HCS") and the Primary Home Care ("PHC") Programs, which were federally authorized Medicaid programs and plans operated by the Texas Department of Aging and Disability Services ("DADS").   The HCS and PHC Programs provided community-based services and support to individuals with intellectual disabilities, in-home attendant services to individuals who had an approved medical need for assistance with personal-care tasks, or in-home attendant services to eligible adults.   Collectively, the services offered by both the HCS and PHC Programs were known commonly as "personal attendant services" ("PAS").

From in or around 2012 through in or around 2016, Defendant; Oriakhi; Baptist's primary admitting nurse and co-conspirator, Charles Esechie ("Esechie"); and others conspired to defraud Medicare and Medicaid of over $10 million by using the Oriakhi Companies to submit or cause the submission of home healthcare and PAS services claims involving illegal kickback payments by Defendant, Oriakhi, and their co-conspirators to Medicare and Medicaid patients, patient recruiters, and physicians.   Defendant, Oriakhi, Esechie, and their co-conspirators also submitted and caused the submission of claims to Medicare and Medicaid in which they represented falsely that the Oriakhi Companies' patients had a legitimate medical need for or received the home healthcare and PAS services that the Oriakhi Companies billed to Medicare and Medicaid.

From in or around January 2012 through in or around May 2016, the Oriakhi Companies billed Medicaid approximately $8,372,991 for PAS services that it had purportedly provided to patients.   Medicaid paid approximately $7,894,135 on those fraudulent claims.

10

Illegal Kickback Payments

Defendant participated in these Medicare- and Medicaid-fraud conspiracies by engaging in conduct that Defendant knew was illegal at the time that she engaged in it. For example, Defendant, Oriakhi, and their co-conspirators paid illegal kickback payments to patient recruiters for referring Medicare and Medicaid patients to the Oriakhi Companies for home healthcare and PAS services that Defendant knew that many of the patients neither needed nor received from the Oriakhi Companies. Oriakhi authorized Defendant to pay these illegal kickback payments to the patient recruiters, and, at times, directed Defendant to use a stamp of his signature to sign the illegal kickback payment checks that were given to the patient recruiters. At Oriakhi's direction, Defendant also paid illegal kickback payments to physicians to induce them to certify, re-certify, or authorize the Oriakhi Companies' patients for home healthcare and PAS services. Defendant knew that many of those patients neither needed nor received the billed-for services.

In addition, Defendant, Oriakhi, and their co-conspirators paid illegal kickback payments to Medicare and Medicaid patients to induce those patients to allow the Oriakhi Companies to use them to bill Medicare and Medicaid for home healthcare and PAS services. Defendant knew that many of these patients neither needed nor received the home healthcare and PAS services from the Oriakhi Companies. Oriakhi directed Defendant to pay these illegal kickbacks.

Defendant also knew that, under their rules and regulations, neither Medicare nor Medicaid paid for claims that involved such illegal kickback payments.

Home Healthcare Fraud

In addition, Defendant knew that many of Baptist's patients did not need or meet the

Medicare qualifications to receive Medicare-covered home healthcare services from Baptist, and that Esechie and others often did not provide Baptist's patients with legitimate home healthcare services.   In fact, Defendant knew that Esechie sometimes did not evaluate Baptist's patients for home healthcare services, but completed Medicare-required documents in which Esechie represented falsely that he had evaluated the patients. Nevertheless, Defendant, Oriakhi, and their co-conspirators submitted and caused the submission of claims to Medicare that represented falsely that these patients received medically necessary home healthcare services from Esechie and others, and supported many of those claims with the Medicare documents that Esechie falsified.

PAS Fraud

Defendant also knew that many of the Oriakhi Companies' patients neither needed nor received the PAS services that Defendant, Oriakhi, and their co-conspirators submitted to Medicaid.   Notwithstanding this knowledge, Defendant, Oriakhi, and their co-conspirators submitted or caused the submission of PAS services claims to Medicaid for these patients.

Moreover, Defendant knew that many of the Medicaid patients' personal-care attendants often did not provide the patients with PAS services.   Instead, Defendant knew that the attendants and the Oriakhi Companies' Medicaid patients agreed that the attendants would not provide PAS services to the patients as long as the attendants split the money that they received from the Oriakhi Companies with the patients.   To conceal this agreement, Defendant knew that many of the Medicaid patients and attendants falsified timesheets and other documentation that DADS required the Oriakhi Companies to keep to support the PAS service claims that they submitted to Medicaid.   Defendant, Oriakhi, and their co-conspirators used these documents, which they knew were false, to submit, cause the submission of, and support the false PAS services claims that they

12

submitted to Medicaid.

Later, DADS stopped requiring attendants to complete timesheets and required them to document their PAS services and hours using an Electronic Visit Verification ("EVV") System, which required the attendants to use the patients' telephones or a device provided by DADS to report the PAS services and hours that they provided to the Oriakhi Companies' Medicaid patients. Defendant knew that many of the Oriakhi Companies' Medicaid patients circumvented the EVV System by using their telephones to call the EVV System and pretending to be their attendants, reporting PAS services and hours that Defendant knew the attendants never provided to the Oriakhi Companies' Medicaid patients.   In spite of this knowledge, Defendant, Oriakhi, and their co-conspirators submitted or caused the submission of claims to Medicaid that represented falsely that the attendants had, in fact, provided PAS services and hours to these patients.

Document Destruction

In or around June 2016, law enforcement agents served Defendant with grand jury subpoenas for the Oriakhi Companies' documents and records.   Defendant spoke to Oriakhi, who was on bond and facing criminal charges in this case, about the grand jury subpoenas.   Oriakhi instructed Defendant to destroy some of the documents and records requested by the grand jury subpoenas, which Defendant did.   Over the course of approximately two days, Defendant followed Oriakhi's instructions and shredded documents and records requested by the grand jury subpoenas.   Defendant shredded these documents and records believing that they may have contained evidence that incriminated Defendant and Oriakhi.

Defendant engaged in the above conduct with the intent to defraud Medicare and Medicaid.

**Breach of Plea Agreement**

17.     If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand.  In the event that Defendant fails to fulfill completely all of the obligations under this Plea Agreement, including the failure to tender such agreement to the Court, makes false or misleading statements before the Court or to any agents of the United States, commits any further crimes, or attempts to withdraw the plea (prior to or after pleading guilty to the charge(s) listed herein), the United States will have the right to characterize such conduct as a breach of this Plea Agreement.  In the event of such a breach, Defendant waives any protections afforded by Section 1B1.8(a) of the Sentencing Guidelines, Rule 11 of the Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence, and the United States will be free to use against Defendant, directly and indirectly, in any criminal or civil proceeding, any of the information, statements, and materials provided by her pursuant to this Plea Agreement, including offering into evidence or otherwise using the Factual Basis in this Plea Agreement at paragraph 16 in its case-in-chief at trial.  If at any time Defendant retains, conceals, or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.  Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

14

**Restitution, Forfeiture, and Fines – Generally**

18.     This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that she will make a full and complete disclosure of all assets over which she exercises direct or indirect control, or in which she has any financial interest. Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which she has an interest, unless Defendant obtains the prior written permission of the United States.

19.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) by the deadline set by the United States, or if no deadline is set, prior to sentencing.   Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information.   Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

20.     Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.   Defendant also agrees to direct any banks which have custody of her assets to deliver all funds and records of such assets to the United States.

21.     Defendant understands that forfeiture, restitution, and fines are separate

components of sentencing and are separate obligations.

### Restitution

22.     Defendant agrees to pay full restitution to the victim regardless of the count of conviction.   Defendant stipulates and agrees that as a result of her criminal conduct, Medicaid incurred a monetary loss of approximately $7,894,135.   Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim.   Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.   Defendant also understands that she will be jointly and severally liable for payment of this restitution amount with her co-defendants and co-conspirators.

### Forfeiture

23.     Defendant stipulates and agrees that the property listed in the Second Superseding Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

24.     Defendant stipulates and agrees that the factual basis for her guilty plea supports the forfeiture of at least approximately $7,894,135 against her and in favor of the United States, and Defendant agrees to the imposition of a personal money judgment for that amount against her and in favor of the United States of America.   Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists.   Defendant agrees to forfeit any of her property, or her interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

25.     Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

16

26.     Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

27.     Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

## Fines

28.     Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any.   Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.   Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

//

//

//

17

**Complete Agreement**

29.    This written Plea Agreement, consisting of twenty pages, including the attached addendum of Defendant and her attorney, constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel.   No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement.   Defendant acknowledges that no threats have been made against him and that she is pleading guilty freely and voluntarily because she is guilty.

30.    Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at _____, Texas, on _____, 2017.

_____
Defendant

Subscribed and sworn to before me on _____, 2017.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____

Deputy United States District Clerk

APPROVED:

By: _____          _____
Jonathan T. Baum                                              Robert J. Fickman
Aleza S. Remis                                                   Attorney for Defendant
William S.W. Chang
Trial Attorneys
Fraud Section, Criminal Division
United States Department of Justice
Phone:   (202) 616-9628

18

Email:   jonathan.baum@usdoj.gov
aleza.remis@usdoj.gov
william.chang@usdoj.gov

**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **CRIMINAL NO. 4:15-CR-319** |
| **IDIA ORIAKHI,** | |
| **Defendant.** | |

### PLEA AGREEMENT ADDENDUM

I have fully explained to Defendant her rights with respect to the pending Second Superseding Indictment.   I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case.   I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction.   Further, I have carefully reviewed every part of this Plea Agreement with Defendant.   To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          JANUARY 12, 2017
Robert J. Fickman                              Date
Attorney for Defendant

19

I have consulted with my attorney and fully understand all my rights with respect to the Second Superseding Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

X _____         January 12, 2017
Idia Osiakhi                          Date
Defendant

20