UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL NO. 4:15-CR-319 |
| CHARLES ESECHIE, | |
| Defendant. | |

### PLEA AGREEMENT

The United States of America, by and through Abe Martinez, Acting United States Attorney for the Southern District of Texas; Senior Trial Attorney Jonathan T. Baum and Trial Attorneys Aleza S. Remis, Fraud Section, Criminal Division, United States Department of Justice; Defendant, Charles Esechie ("Defendant"); and Defendant's counsel, Robert Alton Jones, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the Second Superseding Indictment. Count One charges Defendant with conspiracy to violate Title 18, United States Code, Section 1349, that is healthcare fraud, in violation of Title 18, United States Code, Section 1347. By entering this plea, Defendant agrees that he is waiving any right to have the facts that the law makes essential to the punishment proven to a jury or a judge beyond a reasonable doubt.

### Punishment Range

2. The *statutory* maximum penalty for violation of Title 18, United States Code, Section 1349, is a term of imprisonment of not more than ten years or a fine of not more than $250,000, or both; full restitution; and forfeiture of assets as outlined below. Defendant may

also receive a term of supervised release after imprisonment of up to three years. *See* Title 18, United States Code, Sections 1347, 3556, 3559(a)(3), 3571(b)(3), 3581(b)(3), and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release that may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

2

### Exclusion from Federal Healthcare Programs

5. Defendant understands and acknowledges that as a result of this plea, Defendant will be excluded from participating in all federal healthcare programs, including the Medicare and Medicaid Programs ("Medicare" and "Medicaid," respectively). Defendant agrees to complete and execute all necessary documents provided by any department or agency of the federal government, including but not limited to, the United States Department of Health and Human Services, to effectuate this exclusion within sixty days of receiving the documents. This exclusion will not affect Defendant's right to apply for and receive benefits as a beneficiary under any federal health care program, including Medicare and Medicaid.

### Rights at Trial

6. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this Plea Agreement. Defendant understands that the rights of a criminal defendant include the following:

    (a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

    (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and,

    (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. But if Defendant desired to do so, he could testify on his own behalf.

3

## Cooperation

7.     The parties understand this Plea Agreement carries the potential for a motion for departure under Section 5K1.1 of the United States Sentencing Guidelines (the "Sentencing Guidelines" or the "Guidelines").  Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Department of Justice, Criminal Division, Fraud Section.   Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines.  Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraphs 18 through 21 and 23 through 27 of this Plea Agreement. Defendant understands and agrees that the United States may request that sentencing be deferred until that cooperation is complete.

8.     Defendant understands and agrees that the usage "fully cooperate," as used herein, includes providing all information relating to any criminal activity known to Defendant, including, but not limited to, healthcare fraud.   Defendant understands that such information includes both state and federal offenses arising therefrom.   In that regard:

(a)     Defendant agrees that this Plea Agreement binds only the United States Attorney for the Southern District of Texas; the United States Department of Justice, Criminal Division, Fraud Section; and Defendant, and that it does not bind any other United States Attorney or any other component or unit of the Department of Justice;

(b)     Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States.   Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this

4

Agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the grand jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and,

(f) Should the recommended departure, *if any*, not meet Defendant's expectations, Defendant understands he remains bound by the terms of this Plea Agreement and that he cannot, for that reason alone, withdraw his plea.

### Agreement Binding – Only Southern District of Texas and U.S. Department of Justice, Criminal Division, Fraud Section

9. This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas; the United States Department of Justice, Criminal Division, Fraud Section; and Defendant. It does not bind any other United States Attorney or any other component of the Department of Justice. The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

### Sentence Determination

10. Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). The United States and Defendant agree that the following Sentencing Guidelines will be used to calculate Defendant's Guidelines range:

5

(a) Defendant and the United States agree that the loss related to the conduct described in the Factual Basis of this Plea Agreement is the amount of fraudulent claims that Defendant and his co-conspirators billed to Medicare, which was approximately $5,099,970, and that this loss amount will be used to support an 18-level enhancement to his base offense level under Section 2B1.1(b)(1)(J) of the Sentencing Guidelines because Defendant and his co-conspirators intended to defraud Medicare of more than $3.5 million;

(b) Defendant and the United States agree that the Court should apply Section 2B1.1(b)(7) of the Sentencing Guidelines and enhance Defendant's base offense level by 2 levels because Defendant and his co-conspirators defrauded Medicare of more than $1 million;

(c) Defendant and the United States agree that the Court should apply Section 2B1.1(b)(2)(A)(i) of the Sentencing Guidelines and enhance Defendant's base offense level by 2 levels because the count of conviction involved ten or more victims;

(d) Defendant and the United States agree that the Court should apply Section 2B1.1(b)(10)(C) of the Sentencing Guidelines and enhance Defendant's base offense level by 2 levels because Defendant and his co-conspirators used sophisticated means to commit the count of conviction;

(e) Defendant and the United States agree that the Court should apply Section 3B1.3 of the Sentencing Guidelines and enhance Defendant's base offense level by 2 levels because Defendant abused a position of trust to commit the count of conviction; and,

(f) Defendant and the United States agree that the Court should apply Section 3C1.1 of the Sentencing Guidelines and enhance Defendant's base offense level by 2 levels because Defendant obstructed justice by tampering with witnesses during the criminal investigation of Defendant's healthcare fraud case.

11. Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction, not a promise, and such estimate **did not induce his guilty plea** and is not binding on the United States, the Probation Office, or the Court. The United States does not

6

make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the Sentencing Guidelines are "effectively advisory" to the Court. *United States v. Booker*, 125 S. Ct. 738 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

12. Defendant acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

13. Defendant understands and agrees that each and all waivers contained in the Plea Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

### The United States' Agreements

14. The United States agrees to each of the following:

    (a) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States

7

    Probation Office that he receive a 2-level downward adjustment pursuant to Section 3E1.1(a) of the Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines;

(b)  Defendant and the United States agree that the base offense level for Count One, Conspiracy to Commit Healthcare Fraud, is determined by Sections 2B1.1(a)(2) and (b) of the Sentencing Guidelines;

(c)  If Defendant fulfills his obligations under this Plea Agreement, the United States agrees to recommend a sentence at the low end of the applicable Sentencing Guideline range;

(d)  If the Defendant substantially assists the United States, and a Motion is made to the Court; the United States will recommend to the Court that the reduction in sentence be subtracted from the low end of the applicable guideline range; and

(e)  If Defendant pleads guilty to Count One of the Second Superseding Indictment, persists in that plea through sentencing, and fulfills his obligations under the cooperation provisions of this Plea Agreement; and if the Court accepts this Plea Agreement, the United States will move to dismiss any remaining counts of the Second Superseding Indictment at the time of sentencing.

### United States' Non-Waiver of Appeal

15.  The United States reserves the right to carry out its responsibilities under Guidelines sentencing. Specifically, the United States reserves the right to:

(a)  Bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)  Set forth or dispute sentencing factors or facts material to sentencing;

(c)  Seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)  File a pleading relating to these issues, in accordance with Section 6A1.2 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and,

(e)  Appeal the sentence imposed or the manner in which it was determined.

8

### Factual Basis for Guilty Plea

16.     Defendant is pleading guilty because he is guilty of the offense charged in Count One of the Second Superseding Indictment, which charges him with conspiracy to commit healthcare fraud, in violation of Title 18, United States Code, Section 1349. If this case were to proceed to trial, Defendant agrees that the United States could prove each element of the offense charged in Count One beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt. During the time period alleged in the Second Superseding Indictment:

#### Baptist & Medicare

Defendant's co-conspirator, Godwin Oriakhi ("Oriakhi"), and members of Oriakhi's family owned, operated, and controlled approximately five fraudulent home healthcare agencies that were located within the Southern District of Texas, including Baptist Home Care Providers, Inc. ("Baptist"), a Texas corporation that Oriakhi and his family operated in Houston, Texas. Oriakhi enrolled Baptist as a healthcare provider in Medicare, which was a "health care benefit program" that affected interstate commerce, as defined by Title 18, United States Code, Section 24. Enrolling Baptist in Medicare allowed Defendant, Oriakhi, and their co-conspirators to submit claims to Medicare seeking reimbursement for home healthcare services that Defendant, a registered nurse ("RN"), and other Baptist employees claimed that they provided to Baptist's Medicare patients. Medicare operated on the honor system, and received and paid claims from Baptist based on the assumption and belief that Defendant, Oriakhi, and their co-conspirators provided legitimate, Medicare-covered home healthcare services to Medicare patients who had a real, legitimate medical need for the services.

9

Medicare Fraud Scheme

In or around 2008, Oriakhi hired Defendant as a nurse at Baptist. Over time, Defendant became the primary admissions nurse at Baptist. Under Medicare laws, regulations, and program instructions known to Defendant, Defendant's job was to visit Baptist's Medicare patients at their homes and assess them for Medicare-covered home healthcare services using a Medicare form known as an Outcome and Assessment Information Set ("OASIS") form. Medicare required Defendant and other nurses to conduct a comprehensive OASIS assessment of Baptist's Medicare patients.

Once Defendant represented on the OASIS forms that Baptist's Medicare patients met the Medicare qualifications to receive Medicare-covered home healthcare services, Oriakhi and his and Defendant's co-conspirators used the OASIS and other Medicare-required forms to bill Medicare for a raft of home healthcare services that Baptist claimed that Defendant and other nurses and healthcare workers provided to Baptist's Medicare patients over a sixty-day period known as an "episode of care." During these sixty-day episodes of care, Defendant knew that Medicare required him and Baptist's other nurses to visit Baptist's Medicare patients at their homes, provide them with Medicare-covered home healthcare services, and complete nursing notes documenting the home healthcare services that Defendant and Baptist's nurses provided to the patients.

Defendant knew that Oriakhi paid illegal kickbacks to several different patient recruiters to recruit and refer Medicare patients to Baptist. Defendant knew that many of these patients did not have a legitimate medical need for home healthcare services, did not meet the Medicare qualifications to receive Medicare-covered home healthcare services, and often did not want

Defendant or Baptist's other nurses visiting them at their homes. Instead, Defendant knew that the patients wanted Oriakhi to pay them illegal kickbacks to agree to allow Oriakhi and his and Defendant's co-conspirators to use the patients' Medicare numbers to bill Medicare for medically unnecessary, but financially lucrative home healthcare services.

Because Defendant knew that many of Baptist's Medicare patients did not need home healthcare services and did not meet the Medicare qualifications to receive Medicare-covered home healthcare services, Defendant knew that his job at Baptist was simply a matter of falsifying OASIS forms, nursing notes, and other documents and records that Oriakhi and his and Defendant's co-conspirators needed to bill and support the fraudulent home healthcare services claims that they billed to Medicare. Contrary to Medicare's laws, regulations, and program instructions, Defendant did not conduct comprehensive OASIS assessments of Baptist's Medicare patients, but falsified hundreds of OASIS forms that made it appear as if Defendant had conducted Medicare-compliant OASIS assessments of Baptist's Medicare patients when, in fact, Defendant knew he had not.

Defendant also falsified many of the OASIS forms that he used to re-certify many of Baptist's Medicare patients for additional episodes of care or discharge them from Baptist. Defendant falsified these re-certification and discharge OASIS forms by using OASIS form templates created for Defendant by Oriakhi and his office staff, and then copying the patient information from the templates onto re-certification and discharge OASIS forms that Defendant completed and signed by hand, making it appear as if he had conducted legitimate, comprehensive OASIS re-certification and discharge assessments of many of Baptist's Medicare patients when Defendant knew he had not done so.

Defendant used and abused his position of trust as a RN to ensure that the OASIS templates created for him by Oriakhi and his and Defendant's co-conspirators contained medical conditions and diagnoses for Baptist's Medicare patients that would warrant the patients' receipt of Medicare-covered home healthcare services from Baptist. If the templates did not contain medical conditions and diagnoses that justified the patients' receipt of Medicare-covered home healthcare services, Defendant used his special knowledge and skill as a RN either to correct the templates or not copy the erroneous medical conditions and diagnoses onto the new OASIS forms that Defendant completed and signed by hand.

Moreover, Defendant falsified OASIS forms by meeting with several of Baptist's Medicare patients at the home of one of Oriakhi's primary patient recruiters, J.D. Defendant conducted perfunctory examinations of the patients recruited by J.D. and another one of Oriakhi's primary patient recruiters, P.W., at J.D.'s home. These perfunctory examinations lasted approximately five to ten minutes per patient, but Defendant represented on the patients' OASIS forms that he had conducted comprehensive examinations of the patients at their homes that lasted approximately an hour. Defendant also represented on the OASIS forms for J.D. and P.W.'s patients that the patients had a legitimate medical need for Medicare-covered home healthcare services when, in fact, Defendant knew that many of J.D. and P.W.'s Medicare patients were homeless, and did not need or qualify for Medicare-covered home healthcare services.

In addition to falsifying the OASIS forms for Baptist's Medicare patients, Defendant also falsified nursing notes for many of Baptist's Medicare patients. Defendant knew that Oriakhi and his and Defendant's co-conspirators used these nursing notes to both bill and support

12

the home healthcare services claims that they billed to Medicare. Nevertheless, Defendant wrote fraudulent nursing notes that represented that he had visited Baptist's Medicare patients at their homes and provided them with Medicare-covered home healthcare services that Defendant knew that many of the patients did not need and did not meet the Medicare qualifications to receive.

While Defendant worked as a nurse for Baptist, Defendant also worked full time as a nurse for the Harris County Hospital District ("HCHD"), often working twelve-hour shifts multiple days a week at HCHD facilities. Defendant's full-time job at the HCHD did not stop Defendant from completing OASIS forms and nursing notes for many of Baptist's Medicare patients, many of whom Defendant knew did not meet the Medicare qualifications to receive Medicare-covered home healthcare services. In many instances, the dates and times during which Defendant represented on both the OASIS forms and nursing notes that he was either conducting comprehensive OASIS assessments of Baptist's Medicare patients or visiting the patients at their homes conflicted with dates and times that Defendant's employment records from HCHD showed that he was working as a nurse at a HCHD facility. For example, Defendant completed OASIS forms and nursing notes in which he represented that he was conducting OASIS assessments of or providing Medicare-covered nursing services to Baptist's Medicare patients when employment records from HCHD showed that in reality, Defendant was across town working approximately twelve-hour shifts as a nurse at a HCHD facility.

Obstruction of Justice

In or about September 2015, Defendant visited a Baptist Medicare patient in her home to explain to her why she had not been paid an illegal kickback for agreeing to allow Baptist to use

her Medicare number to bill Medicare for medically-unnecessary home healthcare services. During this visit, Defendant told the patient that one of Oriakhi's patient recruiters was cooperating with law enforcement, and that Baptist was under criminal investigation. Defendant encouraged the patient to lie to law enforcement, telling her that if law enforcement agents questioned her, she should tell the agents that she knew "nothing" about the fraud committed by Defendant, Oriakhi, and their co-conspirators.

Defendant's fraudulent conduct and the fraudulent conduct of his co-conspirators allowed Baptist to submit approximately $5,099,970 in false and fraudulent home healthcare claims to Medicare between in or around 2009 and in or around 2015. Medicare paid Defendant and his co-conspirators approximately $4,792,199 on these false and fraudulent claims.

Defendant engaged in the above conduct with the intent to defraud Medicare and Medicaid.

## Breach of Plea Agreement

17. If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand. In the event that Defendant fails to fulfill completely all of the obligations under this Plea Agreement, including the failure to tender such agreement to the Court, makes false or misleading statements before the Court or to any agents of the United States, commits any further crimes, or attempts to withdraw the plea (prior to or after pleading guilty to the charge(s) listed herein), the United States will have the right to characterize such conduct as a breach of this Plea Agreement. In the event of such a breach, Defendant waives any protections afforded by Section 1B1.8(a) of the Sentencing Guidelines,

Rule 11 of the Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence, and the United States will be free to use against Defendant, directly and indirectly, in any criminal or civil proceeding, any of the information, statements, and materials provided by him pursuant to this Plea Agreement, including offering into evidence or otherwise using the Factual Basis in this Plea Agreement at paragraph 16 in its case-in-chief at trial. If at any time Defendant retains, conceals, or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

18. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

19. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) by the deadline set by the United States, or if no deadline is set, prior to sentencing. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing

authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

20. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

21. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

22. Defendant agrees to pay full restitution to the victim regardless of the count of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, Medicare incurred a monetary loss of approximately $4,792,199. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Defendant also understands that he will be jointly and severally liable for payment of this restitution amount with his co-defendants and co-conspirators.

## Forfeiture

23. Defendant stipulates and agrees that the property listed in the Second Superseding

Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

24. Defendant stipulates and agrees that the factual basis for his guilty plea supports the forfeiture of at least approximately $4,792,199 against him and in favor of the United States, and Defendant agrees to the imposition of a personal money judgment for that amount against him and in favor of the United States of America. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists. Defendant agrees to forfeit any of his property, or his interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

25. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

26. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

27. Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

28. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to

avoid or delay payment. Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

29. This written Plea Agreement, consisting of twenty pages, including the attached addendum of Defendant and his attorney, constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

30. Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at _Houston_, Texas, on _March 17_, 2017.

_____
Defendant

Subscribed and sworn to before me on _March 17_, 2017.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

By: _____
Jonathan T. Baum
Aleza S. Remis
Trial Attorneys
Fraud Section, Criminal Division
United States Department of Justice

_____
Robert Alton Jones
Attorney for Defendant

18

**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | **CRIMINAL NO. 4:15-CR-319** |
| **CHARLES ESECHIE,** | |
| **Defendant.** | |

## PLEA AGREEMENT ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Second Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the Court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Robert Alton Jones
Attorney for Defendant

03/15/17
Date

I have consulted with my attorney and fully understand all my rights with respect to the Second Superseding Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____     03/15/2017
Charles Esechie                                            Date
Defendant